**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM McDUFFIE, | CASE NO. 3:22-CV-00098 |
| Petitioner, | JUDGE PAMELA A. BARKER |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN WANZA JACKSON-MITCHELL, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Petitioner William McDuffie ("Petitioner" or "Mr. McDuffie") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his sentence and conviction for possession of cocaine in Marion County Court of Common Pleas Case No. 2019CR0026.  (ECF Doc. 1 ("Petition").)  He filed his Petition with the assistance of counsel on January 18, 2022.  (*Id.*)

The matter was reassigned to the undersigned Magistrate Judge on February 15, 2022, pursuant to General Order 2022-03.  The case is briefed and ripe for disposition.  (ECF Docs. 7 & 9.)  For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** the Petition with prejudice on the basis of procedural default.

### I. Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

1

The Third District Court of Appeals summarized the facts underlying Mr. McDuffie's conviction and sentence as follows:

> {¶2} This case arose after the MARMET Drug Task Force ("Task Force") obtained and executed a search warrant at McDuffie's residence in Marion, Ohio on January 11, 2019. (Doc. No. 45). During the search of McDuffie's bedroom, the Task Force discovered 24.12 grams of crack cocaine located inside a plastic baggie hidden in a plastic container. (*Id.*). Further, during the search, Kayla Hamm ("Hamm"), McDuffie's girlfriend, was searched yielding the discovery of a cell-phone and $1,089 in cash thought to be the proceeds of illegal-drug sales. (*Id.*). (*See* PSI).
>
> {¶3} On January 24, 2019, the Marion County Grand Jury indicted McDuffie and Hamm (in a joint indictment) on one count of Possession of Cocaine in violation of R.C. 2925.11(A), (C)(4), a second-degree felony. (Doc. No. 2). McDuffie's indictment included a forfeiture specification as to property under R.C. 2941.1417 and R.C. 2981.02.[1] (Doc. No. 2). On January 28, 2019, McDuffie appeared for arraignment and entered a plea of not guilty. (Doc. No. 5).
>
>> [FN 1] Hamm ultimately plead guilty to Possession of Cocaine, a fourth-degree felony. (Oct. 9, 2019 Tr. at 143-144).
>
> {¶4} On October 9, 2019, McDuffie's case proceeded to a jury trial, where he was found guilty of Possession of Cocaine. (Doc. No. 64). At McDuffie's sentencing hearing, the State moved to dismiss the forfeiture specification in the indictment, which the trial court granted. (Doc. No. 67).

*State v. McDuffie*, 2020-Ohio-5466, ¶¶ 2-4, 2020 WL 7018511, at * 1 (Ohio App. Ct. 2020); (ECF Doc. 7-1, pp. 87-88.)

## II.     Procedural Background

### A.     State Court Conviction

On January 24, 2019, a Marion County Grand Jury charged Mr. McDuffie and his co-defendant, Kayla Hamm, in a joint indictment. (ECF Doc. 7-1, pp. 3-4.) Mr. McDuffie was charged with one count of Possession of Cocaine in violation of R.C. 2925.11(A), (C)(4), with a forfeiture specification. (*Id.*) Mr. McDuffie entered a plea of not guilty. (*Id.* at p. 87.) On October 8, 2019, the case proceeded to a jury trial, which concluded on October 9, 2019. (*Id.* at p. 5.) The jury found Mr. McDuffie guilty as to Count One, Possession of Cocaine, a second-

degree felony.[1] (*Id*.) The trial court subsequently granted the State's motion to dismiss the forfeiture specification. (*Id*.) On October 28, 2019, the trial court sentenced Mr. McDuffie to a mandatory term of eight years in prison. (*Id*. at pp. 5, 755.) The trial court also imposed a mandatory drug fine in the amount of $7,500.00 and advised Mr. McDuffie he would be subject to a period of post-release control. (*Id*. at pp. 5-6, 755-56.) The Judgment Entry of Sentencing was docketed on October 31, 2019.[2] (*Id*. at pp. 5-6.)

**B.      Direct Appeal**

On November 15, 2019, Mr. McDuffie filed a notice of appeal with the Third District Court of Appeals with the assistance of appellate counsel. (ECF Doc. 7-1, p. 8.) In his June 1, 2020 appellate brief (*id*. at pp. 9-27), he raised the following assignments of error:

1. Appellant's due process right to a fair trial was violated by the admission of evidence of other acts that were used to draw an improper character inference.

2. Appellant's due process right to a fair trial was violated by the prosecutor's improper comments regarding the credibility of a witness during closing argument.

(*id*. at pp. 10, 12, 17-24). On June 26, 2020, Mr. McDuffie filed a pro se motion for leave to file a supplemental brief. (*Id*. at pp. 52-66.) On July 7, 2020, the court of appeals granted Mr. McDuffie's motion for leave to file a supplemental pro se brief, granting him leave until July 22, 2020, to file his pro se supplemental brief. (*Id*. at p. 67.) The state filed its appellate brief on July 7, 2020. (*Id*. at pp. 28-51.) On July 27, 2020, Mr. McDuffie filed his pro se supplemental brief (*id*. at pp. 68-87), setting forth four additional assignments of error (*id*. at pp. 69-70). On November 30, 2020, the Third District Court of Appeals affirmed the judgment of the trial court.

---

[1] Ms. Hamm plead guilty to Possession of Cocaine, a fourth-degree felony. (ECF Doc. 7-1, p. 87, n.1; *see also* ECF Doc. 7-1, p. 662.)

[2] On that same date, a nunc pro tunc entry was filed to correct a clerical error in the Judgment Entry of Sentencing. (ECF Doc. 7-1, p. 7.)

(ECF Doc. 7-1, pp. 86-100.)  Mr. McDuffie did not timely appeal to the Supreme Court of Ohio.[3]

## C. First Motion for Delayed Appeal

On May 10, 2021, Mr. McDuffie filed a pro se notice of appeal from the November 30, 2020 judgment of the Third District Court of Appeals with the Supreme Court of Ohio (ECF Doc. 7-1, pp. 101-03) and a motion for delayed appeal (*id*. at pp. 104-25) (Case No. 2021-0606).  He argued that he did not learn that he lost his appeal until December 23, 2020, and that he was unable to file a notice of appeal within the required forty-five-day period due to COVID restrictions and the lack of an adjudication on the issues raised in his supplemental brief.  (*Id*. at p. 108.)  On May 21, 2021, the Supreme Court of Ohio granted Mr. McDuffie's "motion for delayed appeal due to COVID-19" and ordered him to "file a memorandum in support of jurisdiction within 30 days from the date of [the] entry."  (*Id*. at p. 126.)  On June 29, 2021, the Supreme Court of Ohio dismissed Mr. McDuffie's appeal because he had failed to file "a memorandum in support of jurisdiction, due June 21, 2021, in compliance with the Rules of Practice of the Supreme Court of Ohio and therefore [had] failed to prosecute [the] cause with the requisite diligence."[4]  (*Id*. at p. 127.)

## D. Second Motion for Delayed Appeal

On November 16, 2021, Mr. McDuffie, through counsel, filed another notice of appeal from the November 30, 2020 judgment of the Third District Court of Appeals with the Supreme

---

[3] Mr. McDuffie's notice of appeal was due on or before January 14, 2021.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i) (requiring the filing of "a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed").

[4] The Rules of Practice of the Supreme Court of Ohio provide: "If the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within thirty days after the motion for delayed appeal is granted. If a memorandum in support of jurisdiction is not timely filed after a motion for delayed appeal has been granted, the Supreme Court will dismiss the appeal."  *See* Ohio S. Ct. Prac. R. 7.01(A)(4)(b).

Court of Ohio (ECF Doc. 7-1, pp. 128-30) and a motion for delayed appeal (*id*. at pp. 131-51) (Case No. 2021-1402). In his motion for delayed appeal, Mr. McDuffie argued that "despite his efforts," he was unable to comply with procedural requirements necessary to have his cause reviewed because he was indigent and pro se and "was unfamiliar with the relevant legal standards and procedural requirements and lacked relevant background or education which would have otherwise proven useful in ensuring timely compliance." (*Id*. at pp. 131-32, 135.) He also argued that his struggles in complying with the procedural requirements were further compounded by "COVID-19 related issues within the Ohio prison system which . . . at times, resulted in inconsistent access to libraries and otherwise impacted access to legal materials." (*Id*.) He requested the opportunity to file a memorandum in support of jurisdiction to raise the following propositions of law:

1.  A curative instruction does not unilaterally dispel a claim of prejudice where the prosecution commits misconduct; and

2.  Irrelevant evidence may not be used to attack a defendant's character under the guise of impeaching a witness.

(*Id*. at p. 132.) On December 2, 2021, the Supreme Court of Ohio denied Mr. McDuffie's second motion for delayed appeal. (*Id*. at p. 152.) In its entry denying the motion for delayed appeal, the Supreme Court of Ohio stated:

> Upon review of the decision on appeal, it has been determined that on June 29, 2021, in Supreme Court Case No. 2021-0606, *State of Ohio v. William A. McDuffie*, this court dismissed for want of prosecution an appeal from the same judgment, dated November 30, 2020, currently being appealed. Accordingly, this cause is dismissed.
>
> It is further ordered that no further motions for delayed appeal from the November 30, 2020 judgment entry of the Third District Court of Appeals shall be accepted for filing.

(*Id*.)

E.	**Federal Habeas Corpus Petition**

Mr. McDuffie raises two grounds for relief in his Petition:

**Ground One:** Prosecutorial misconduct resulted in a violation of Petitioner's due process rights.

**Ground Two:** The right to due process and confrontation are violated where irrelevant, unnoticed evidence is admitted with the intention to prejudice the jury.

(ECF Doc. 1, pp. 6-8; ECF Doc. 1-2, pp. 3-8.)

### III.	Law & Analysis

A.	**Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *See Cullen*, 563 U.S. at 181.

**B.     Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United*

*States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, procedural default applies where state court remedies are no longer available. *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282

8

F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

**C.**   **Grounds One and Two**

Respondent argues that the Petition should be dismissed because Grounds One and Two were both procedurally defaulted. (ECF Doc. 7, pp. 5-9, 12-14.) Specifically, Respondent argues that the claims in the Petition were procedurally defaulted because Mr. McDuffie did not timely appeal the state court of appeals decision ruling on those claims to the Supreme Court of Ohio and, when granted leave to file a delayed appeal, did not meet the deadline to file his memorandum in support of jurisdiction as required by Ohio S. Ct. Prac. R. 7.01(A)(4)(b),

9

resulting in dismissal of his appeal.[5] (*Id*. at pp. 5-9.) Respondent argues that that the Petition should be dismissed based on procedural default, since Mr. McDuffie cannot show cause to excuse the procedural default. (*Id*. at p. 9.) In the alternative, Respondent argues that Mr. McDuffie's grounds for relief are without merit and should be denied. (*Id*. at pp. 9-11, 14-23.)

In response, Mr. McDuffie argues that the Court should find his claims were not procedurally defaulted or should excuse any procedural default (ECF Doc. 9, pp. 4-8, 19), and should find his grounds for relief meritorious and grant him federal habeas relief (*id*. at pp. 8-19). He contends that his "efforts [to seek review in the Supreme Court of Ohio] should . . . qualify as a full and fair opportunity to resolve the claims raised herein." (*Id.* at p. 7.) Even if his claims were procedurally defaulted, he asserts there is cause to excuse the default and that a failure to review his claims would result in a fundamental miscarriage of justice. (*Id*. at pp. 8, 19.)

### 1. Whether Claims in Grounds One and Two Were Procedurally Defaulted

The first way a petitioner may procedurally default is by failing "to comply with state procedural rules in presenting his claim to the appropriate state court." *See Williams*, 460 F.3d at 806. This is the basis upon which Respondent argues Mr. McDuffie procedurally defaulted. (ECF Doc. 7, pp. 5-9.) To assess procedural default on this basis, courts in this circuit apply the four-prong *Maupin* analysis. *See Williams*, 460 F.3d at 807 (citing *Maupin*, 785 F.2d at 138).

Under the first two prongs of the *Maupin* analysis, this Court must determine whether Mr. McDuffie failed to comply with a procedural rule and whether the state enforced that rule. *See* 785 F.2d at 138. Here, the Supreme Court of Ohio granted Mr. McDuffie's first motion for

---

[5] Respondent also argues that Mr. McDuffie's second ground for relief was procedurally defaulted due to Mr. McDuffie's failure to raise a contemporaneous objection to the admission of the evidence on the same grounds at trial. (*Id*. at pp. 12-14.) Because the undersigned finds Mr. McDuffie has procedurally defaulted both grounds for the reasons explained herein, it is unnecessary to address Respondent's alternative procedural default argument.

delayed appeal and ordered him to file a memorandum in support of jurisdiction within thirty days, consistent with the procedural requirements in Ohio S. Ct. Prac. R. 7.01(A)(4)(b). (ECF Doc. 7-1, p. 126.) Supreme Court Practice Rule 7.01(A)(4)(b) provides:

> If the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within thirty days after the motion for delayed appeal is granted. If a memorandum in support of jurisdiction is not timely filed after a motion for delayed appeal has been granted, the Supreme Court will dismiss the appeal.

*Id.* On June 29, 2021, the Supreme Court of Ohio dismissed Mr. McDuffie's appeal because he failed to file "a memorandum in support of jurisdiction . . . in compliance with the Rules of Practice of the Supreme Court of Ohio and therefore . . . failed to prosecute [his] cause with the requisite diligence." (ECF Doc. 7-1, p. 127.) Thus, Mr. McDuffie failed to comply with a procedural rule and the state enforced that rule. The first two *Maupin* prongs were met.

Under the third prong of the *Maupin* analysis, this Court must determine whether the relevant procedural rule establishes an adequate and independent state law ground under which the claim may be procedurally defaulted. *See* 785 F.2d at 138. The Sixth Circuit has observed that "Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Lower courts have further recognized that a failure to timely file a memorandum in support of jurisdiction after the Supreme Court of Ohio granted a motion for delayed appeal is an adequate and independent state law ground supporting procedural default. *See, e.g., Armstrong v. Jackson*, No. 3:06CV087, 2009 WL 585853, at *15 (S.D. Ohio Mar. 6, 2009); *Wood v. Noble*, No. 3:17-CV-215, 2017 WL 4076483, at *4 (S.D. Ohio Sept. 13, 2017) (finding the procedural rule "fits all the criteria required by *Maupin*" and "protects and regularizes the Ohio Supreme Court's use of its scarce resources by enabling it to decide wha[]t cases are appropriate for its time and attention"), *report and recommendation adopted sub nom. Wood v. Warden, London*

11

*Corr. Inst.*, No. 3:17-CV-215, 2017 WL 4570295 (S.D. Ohio Oct. 11, 2017).  The undersigned finds that the third prong of the *Maupin* analysis has been met.[6]  This Court must therefore find that the claims in Grounds One and Two of the Petition were procedurally defaulted unless Mr. McDuffie is able to show "cause" excusing his failure to meet procedural requirements and actual prejudice resulting from the alleged constitutional violations.  *Maupin*, 785 F.2d at 138.

Before addressing the issues of cause and prejudice, the undersigned observes that the record demonstrates an additional basis for procedural default on Grounds One and Two of the Petition.  On federal habeas review, a district court cannot consider issues that were not presented at every level of the Ohio state court system.  *See Baston*, 282 F.Supp.2d at 661.  Where a petitioner has not pursued a claim "through the state's 'ordinary appellate review procedures,'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848), and "state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted," *id.* at 806.

Here, although the Supreme Court of Ohio allowed Mr. McDuffie an opportunity to pursue his appeal through a delayed appeal after he failed to timely appeal in the first instance (ECF Doc. 7-1, p. 126), that appeal is no longer available under Ohio law because he failed to comply with the procedural rule for filing his memorandum in support of jurisdiction (*id*. at p. 127).  Because Mr. McDuffie failed to present his claims in Grounds One and Two at every level of the Ohio state court system, and there is no avenue available for him to raise his claims in state court, the undersigned finds Grounds One and Two were procedurally defaulted on that basis as well.  *See Agostini v. Collins*, No. 20-3028, 2020 WL 3815671, at *2 (6th Cir. June 15,

---

[6] The undersigned also observes that Mr. McDuffie's second motion for delayed appeal (ECF Doc. 7-1, pp. 131-51), which the Supreme Court of Ohio dismissed because the court had already "dismissed for want of prosecution an appeal from the same judgment" (*id.* at p. 152), also amounted to the enforcement of a state procedural rule as contemplated in the first two *Maupin* prongs. And the Supreme Court of Ohio's dismissal of the second motion for delayed appeal also enforced an adequate and independent state procedural rule, since "the Ohio Supreme Court does not allow a second delayed direct appeal in felony cases." *Armstrong*, 2009 WL 585853, at *6.

12

2020) (finding procedural default where Ohio Supreme Court dismissed petitioner's delayed appeal for want of prosecution after petitioner failed to file a timely memorandum in support of jurisdiction); *see also Scott v. Warden*, No. 2:21-CV-04996, 2022 WL 1186184, at *8 (S.D. Ohio Apr. 21, 2022), *report and recommendation adopted sub nom. Scott v. Warden, Noble Corr. Inst.*, No. 2:21-CV-4996, 2023 WL 2918022 (S.D. Ohio Apr. 12, 2023).

The fourth prong of the *Maupin* analysis addresses whether Mr. McDuffie can show cause for his failure to follow the procedural requirement to timely file his memorandum in support of jurisdiction and that he was actually prejudiced by the constitutional errors alleged in Grounds One and Two. 785 F.2d at 138. Similarly, to excuse his procedural default for failing to present the claims in Grounds One and Two at every level of the Ohio state court system, Mr. McDuffie must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. The undersigned therefore turns to whether there is a basis to excuse procedural default.

**2.     Whether Cause and Prejudice Excuse the Procedural Default**

Mr. McDuffie concedes he did not timely file an appeal with the Supreme Court of Ohio and did not comply with the procedural rule that required him to file a memorandum in support of jurisdiction (ECF Doc. 1, p. 13; ECF Doc. 1-2, p. 1; ECF Doc. 9, p. 5), but he argues that his efforts—including his appeal to the Third District Court of Appeals and his attempts to seek review before the Supreme Court of Ohio—and his status as "an indigent, incarcerated individual laboring in unfamiliar waters during a global pandemic . . . should . . . qualify as a full and fair opportunity to resolve the claims raised herein" (ECF Doc. 9, p. 7).

13

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot fairly be attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Mr. McDuffie argues that there is sufficient cause to excuse his procedural default because he "was unable to secure counsel to file in the Ohio Supreme Court within the time frame proscribed" (ECF Doc. 9, p. 6) and "[a] lack of financial and legal resources, coupled with an unprecedented global pandemic, should amount to sufficient cause which caused Mr. McDuffie prejudice in that he was unable to meet Ohio's deadlines" (*id.* at p. 8). For the reasons set forth below, the undersigned concludes that Mr. McDuffie's arguments regarding "cause" are inadequate and must fail.

As to Mr. McDuffie's stated inability to secure counsel within the specified time frame, the Sixth Circuit has held that "pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse . . . procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004); *see also Canales v. Gray*, No. 5:18CV1857, 2021 WL 3056317, at *2 (N.D. Ohio July 20, 2021) ("[A] petitioner's pro se status and limited access to the prison law library are insufficient to establish cause to excuse procedural default.") (citing *Bonilla*, 370 F.3d at 498). And as to Mr. McDuffie's asserted lack of financial and legal resources, the Sixth Circuit has similarly held that "ignorance of the law and procedural requirements," such as legal filing deadlines, "is insufficient to establish cause to excuse . . . procedural default." *Bonilla*, 370 F.3d at 498.

As to the unspecified impact of the "unprecedented global pandemic" on Mr. McDuffie's ability to comply with state procedural rules, courts have consistently held that "bare bone assertions" regarding the pandemic, without "*specific* details as to how the COVID-19 pandemic" caused the procedural default, are insufficient to excuse default. *Black v. Warden*,

14

*Pickaway Corr. Inst.*, No. 2:22-CV-3087, 2023 WL 8811032, at *19 (S.D. Ohio Dec. 20, 2023) (emphasis in original) (citing cases), *report and recommendation adopted,* No. 2:22-CV-3087, 2024 WL 1735073 (S.D. Ohio Apr. 23, 2024)*; see, e.g., Kincaid v. Campbell*, No. 2:21-CV-10574, 2024 WL 1054525, at *5 (E.D. Mich. Mar. 11, 2024) (recognizing that the "pandemic itself is extraordinary," but finding that the petitioner failed "to explain with specificity" how the pandemic impeded his ability to prepare and timely file the required application); *Holt v. Mays*, No. 121CV01168JDBJAY, 2023 WL 2416395, at *4 (W.D. Tenn. Feb. 13, 2023), *reconsideration denied,* No. 121CV01168JDBJAY, 2023 WL 2411024 (W.D. Tenn. Mar. 8, 2023) (finding petitioner's "bald assertion that the pandemic precluded him from exhausting . . . insufficient in the absence of specific factual support," and he had therefore "failed to show cause and prejudice to excuse the defaults"); *see also Scott*, 2022 WL 1186184, at *9 (finding COVID-19 did not constitute cause to excuse petitioner's procedural default).[7]

Mr. McDuffie's arguments regarding the impact of the pandemic on his ability to meet procedural requirements are limited to generalized assertions that there was "an unprecedented global crisis, which significantly impacted incarcerated individuals" and that he "made the best efforts he could as an indigent, incarcerated individual laboring in unfamiliar waters during a global pandemic, but was unable to actually file a memorandum in support of his positions seeking jurisdiction."  (ECF Doc. 9, pp. 6-7.)  These bare bones assertions lack specific factual support, and are insufficient to establish cause to excuse his default.  Accordingly, the undersigned finds that Mr. McDuffie has failed to establish sufficient cause to excuse his procedural default.  Since Petitioner has failed to demonstrate the requisite "cause" to excuse his

---

[7] Courts have also held that "[l]ockdowns, segregation, and limited law library access are normal aspects of prison life," *Kincaid*, 2024 WL 1054525, at *4 (citing cases), so that "general claims about prison Covid cases and associated lockdowns and quarantines with limited law library access do not establish cause to excuse . . . default," *id.* at *5 (citing cases).

15

procedural default it is not necessary to consider the issue of "prejudice." *Engle v. Isaac*, 456 U.S. 107, 134, n. 43 (1982).

### 3. Whether Procedural Default Should Be Excused Because There Will Be a Fundamental Miscarriage of Justice if His Claims Are Not Considered

Even if he cannot establish "cause" and "prejudice" to excuse his procedural default, Mr. McDuffie argues that his procedural default should be excused because a fundamental miscarriage of justice would result if his claims are not heard on the merits, explaining:

> allowing these factors [lack of financial and legal resources along with the unprecedented global pandemic] to preclude federal review would result in a fundamental miscarriage of justice. Mr. McDuffie has consistently raised two legitimate claims. This was not an instance of an intentional attempt to bypass Ohio's review system in favor of the federal system. Rather, factors outside of Mr. McDuffie's control combined to frustrate his ability to seek redress in the Ohio Supreme Court. But for those circumstances which were, in part, extraordinary, Mr. McDuffie would not face a bar and, as such, has sufficient cause to excuse any possible default that would otherwise result in dismissal.

(ECF Doc. 9, p. 8.)

A procedural default can be excused if a petitioner shows there will be a "fundamental miscarriage of justice" if his claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496). For an actual innocence claim to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He must further "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. This is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest

16

injustice." *Id.* (internal quotations omitted). Notably, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Mr. McDuffie asserts there will be a fundamental miscarriage of justice if his claims are not heard (ECF Doc. 9, p. 8) and states in a conclusory fashion that "[t]he dread that an innocent person's life may be forfeited due to an unfair proceeding has historically been recognized as one that makes the issuance of a writ of habeas corpus felicitous" (ECF Doc. 9, p. 19). However, he does not assert his actual innocence, and has not supported "his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup*, 513 U.S. at 324, or shown that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," *id.* at 327.

The undersigned finds Mr. McDuffie's general assertions that a fundamental miscarriage of justice will occur if his claims are not considered do not satisfy his burden to show that his procedural default should be excused due to a finding of "actual innocence." *See Schlup*, 513 U.S. at 322 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the] [Supreme] Court [has] explicitly tied the miscarriage of justice exception to the petitioner's innocence.")

For the reasons set forth above, the undersigned finds the claims in Ground One and Ground Two were procedurally defaulted, and that Mr. McDuffie has not met his burden to show cause and prejudice or a fundamental miscarriage of justice to excuse that default. Accordingly,

17

the undersigned recommends that the Court **DISMISS** Ground One and Ground Two with prejudice.[8]

### IV. Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS** the Petition with prejudice on the basis of procedural default.

October 22, 2024

> /s/ Amanda M. Knapp
> AMANDA M. KNAPP
> UNITED STATES MAGISTRATE JUDGE

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

---

[8] In light of Mr. McDuffie's procedural default of Grounds One and Two, it is unnecessary to consider Respondent's alternative arguments for denial of Grounds One and Two on the merits.